IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| RUTH HAMERSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Cause No.: |
| | ) | |
| BELLEVILLE AREA SPECIAL | ) | |
| SERVICES COOPERATIVE, | ) | **PLAINTIFF DEMANDS TRIAL** |
| Serve: Matt Stines, Chairperson | ) | **BY JURY** |
| Belleville Area Special | ) | |
| Services Cooperative | ) | |
| 2411 Pathways Crossing | ) | |
| Belleville, IL 62221 | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

### JURISDICTION AND VENUE

1. Counts I, II and III of this action arises under the Fourteenth Amendment of the United States Constitution, and 42 U.S.C. §§ 1983 and 1988. Count IV of this action is brought pursuant to Title VII, 42 U.S.C. § 2000(e). This Court has jurisdiction over Counts I through IV pursuant to 28 U.S.C. § 1331. Count V is a common law claim for breach of contract under the laws of the State of Illinois. The Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367.

2. Venue is proper before this Court pursuant to 28 U.S.C. § 1391, as the unlawful acts occurred in St. Clair County, State of Illinois.

### PARTIES

3. Plaintiff Ruth Hamerski is a citizen of the United States and a resident of St. Clair County, Illinois.

4. Defendant Belleville Area Special Services Cooperative ("BASSC") is an educational cooperative located in St. Clair County, in the City of Belleville, Illinois.[1] BASSC is a federally funded cooperative implementing and enforcing the Individuals with Disabilities Education Act of 1975 ("IDEA"), 20 U.S.C. § 1400 et seq. BASSC receives its funding from Part B grants under the IDEA.

## FACTS COMMON TO ALL COUNTS

5. Plaintiff began her employment with BASSC on July 1, 2007, as an administrator of instructional programs. Prior to taking that position, Plaintiff had served as a teacher and Special Education Department Chair for Mount Vernon High School for twenty-six (26) years. She has an extraordinary knowledge of the IDEA, its policies, procedures and prohibitions.

6. BASSC provides special educational services to children between elementary and high school levels. The services are provided to students with qualified disabilities under the Americans with Disabilities Act ("ADA") of 1990, 42 U.S.C. § 12101, and who are entitled to special educational services under the IDEA.

---

[1] BASSC consists of twenty-three (23) regional school districts: (1) Wesclin Community Unit District #3; (2) Lebanon Community Unit District #9; (3) Mascoutah Community Unit District #19; (4) St. Libory Consolidated District #30; (5) Marissa Community Unit District #40; (6) New Athens Community Unit District #60; (7) Freeburg Comm. Cons. District #70; (8) Freeburg High School District #77; (9) Shiloh Village School District #85; (10) O'Fallon Community Cons. District #90; (11) Central of O'Fallon School #104; (12) Pontiac/Wm. Holliday District #105; (13) Grant Comm. Consolidated District #110; (14) Wolf Branch District #113; (15) Whiteside School District #115; (16) High Mount District #116; (17) Belleville Public Schools #118; (18) Belle Valley School District #119; (19) Smithton Community Cons. District #130; (20) Millstadt Consolidated District #160; (21) Harmony-Emge School District #175; (22) Signal Hill School District #181; and (23) Belleville High School District #201.

The superintendent of each district is a board member on the executive board, which is the operational management of BASSC. The chair person of the executive board relevant to this action was Matt Stines.

7.      In calendar year 2008, Plaintiff was assigned to be the interim principal of a school known as Pathways due to the resignation of the principal in February 2008. Plaintiff had found that the environment at Pathways was both legally and ethically in violation of the ADA and IDEA. Children were routinely being arrested by the police at the staff members' behest as a means of control. The criminal charge against the student would be for disturbing the peace of the individual staff member making the complaint. The environment was itself hostile between the staff and the students. As a consequence, Plaintiff created written policies restricting the use of arrests, isolation, seclusion and restraint.

8.      One paraprofessional at Pathways in particular, by the name of Melissa Stines, was required to be removed by Plaintiff from the high school to the elementary school because of her inability to control her own behavior with students. Ms. Stines went into a tirade with young students present. She refused to leave the building after Plaintiff had instructed her to do so, and Plaintiff had to summon a security guard to escort her off the campus. This infuriated her. She physically threatened Plaintiff, and six (6) months later upon resigning from BASSC, promised that Plaintiff "will hear from me again".

9.      Melissa Stines was at the time, and remains, married to Matt Stines. At the time Plaintiff removed Melissa Stines, Matt Stines was being groomed to become a superintendent at Grant Illini and by virtue of that, a member on the BASSC executive board. Between 2008 and 2015, Matt Stines complained repeatedly in derogatory terms to Plaintiff's supervisor, Jeff Daughtery. In 2009, Matt Stines initiated the formation of a committee to study and oversee the Pathways School, and sought to keep Plaintiff out of the committee, even though Plaintiff's job description specified oversight of the programs at Pathways.

10. In 2011, Matt Stines became board chair of the executive committee. In 2013, Plaintiff announced that she would like to retire in 2017 or 2018. Plaintiff was required to give a four (4) year notice under prior custom and practice. Plaintiff would have received a 6% pay increase for those four (4) years. Mr. Stines, however, opposed that offering only 3%. The percentage offered to Plaintiff for her next four (4) years of employment was approximately one-half the dollar amount that was given to the last retiring administrator, and the current retiring teachers.

11. On October 16, 2013, Plaintiff and Defendant entered into a four (4) year written contract. (Exhibit 1, attached hereto). The contract provided that Plaintiff could only be discharged "for just cause", and if a dismissal were to occur, she would have been entitled to (a) written notice of the charges; (b) notice of hearing; (c) a full hearing to confront and cross-examine witnesses and evidence, and (d) be represented by counsel. (Exhibit 1, p. 2).

12. Between 2007 and January 2015, Plaintiff received annual performance appraisals by the executive director of BASSC, Mr. Jeff Daugherty. On each of her annual performance appraisals, she received "excellent" in virtually every category. Plaintiff had no issues to be criticized as related to her work performance.

13. In 2015, Plaintiff would however have latent, unresolved issues in the mind of Matt Stines, and his wife, Melissa Stines. Those unresolved issues were about to unfold.

14. In March 2015, Matt Stines, in his capacity as chair and president of the executive board, had hired the law firm of Guin Mundorf, LLC to investigate Plaintiff. Upon information and belief, Matt Stines had no authority from the executive board to finance that investigation, which was required. The investigation cost $12,000.00, and there are no existing board minutes approving such expenditure prior to Stines directing it.

4

15. On Friday, March 13, 2015, Plaintiff's supervisor, the executive director of BASSC, Jeff Daugherty told her that Matt Stines had informed him that Plaintiff was being criticized by three (3) subordinates, two (2) of whom were Diane Warfield and Brent Whipple, regarding IDEA procedures and policies regarding restraint and arrest of disruptive students. Plaintiff had advocated for, and implemented, the procedures which were compliant with the IDEA and the students whom it benefited, and in addition to, were policies adopted and approved by the BASSC executive board and accepted by the Pathways committee. Matt Stines was chairperson of the committee that approved Plaintiff's proposals, and Diane Warfield, as building principal, helped move them through that committee. Plaintiff was now actually being criticized for approved policies by the very people that approved them.

16. Also in that March 13, 2015 discussion between Plaintiff and Jeff Daugherty, Mr. Stines had instructed Mr. Daugherty that both Plaintiff and he were to appear at the law office of Barney Mundorf on Monday, March 16, 2015, regarding the investigation that he (Mr. Stines) had ordered. Mr. Daugherty was further told that he and Plaintiff were not permitted to talk to each other over the weekend.

17. Plaintiff did appear at Mr. Mundorf's office on Monday, March 16, 2015. Plaintiff was not allowed by Mr. Mundorf to explain accusations being made by Mr. Mundorf. Of the accusations made regarding the three (3) subordinates, Mr. Mundorf accused Plaintiff of being negligent in her duties regarding training of teachers; lying about eight (8) claimed work days in July, 2014 - (nine (9) months earlier), and which had been approved as comp days by her supervisor; telling a peer that he was not her supervisor; her IDEA instructions on restraint and arrest of children from calendar year 2008 at Pathways; and, whether she told a subordinate administrator to keep illegal, confiscated drugs in his desk.

18. All of the accusations being made by Mr. Mundorf were utter nonsense, and according to Mundorf, were purportedly coming from only three (3) apparently disgruntled subordinates. At the time, Plaintiff had direct supervision over fifty-four (54) subordinates, and indirect supervision over another eighty-three (83). The apparent three (3) disgruntled employees had not taken their issues through the chain of command to Plaintiff's supervisor, Mr. Jeff Daugherty, nor did Mr. Stines instruct them to contact Jeff Daugherty. Instead, Mr. Stines had sought them out. Mr. Stines had found a way, and the hammer was about to drop.

19. On March 18, 2015, Jeff Daugherty and Plaintiff were summoned to a full executive board meeting. Neither was allowed to talk. Matt Stines and Barney Mundorf presented the findings of their investigation to the other superintendents. The full board then went into closed session but took no action and took no votes regarding Mr. Daugherty or Plaintiff's employment.

20. Following the executive board meeting, Mr. Mundorf and Mr. Stines took Mr. Daugherty and Plaintiff to a conference room. They spoke to Mr. Daugherty first. Mr. Daugherty was not threatened with his employment, but the tactic employed by Mr. Mundorf and Mr. Stines of accusing him of improper conduct, removed him from advocating for Plaintiff. They then turned to Plaintiff.

21. They both informed Plaintiff that the "most serious" act of misconduct against her was her enforcement of the BASSC policy regarding IDEA student arrests and restraints from calendar year 2008. Plaintiff was being criticized for advocating for IDEA students. The two (2) ended their discussion with Plaintiff by telling her she had two (2) options – one was to retire on June 30, 2015 at her current pay level, or second, to be demoted and reassigned as a teacher with

substantially less pay. Strangely, Mr. Mundorf and Mr. Stines were acting as if they knew how the full executive board would vote or be told how to vote. It was a done deal.

22. The following day, March 19, 2015, Mr. Mundorf and Mr. Stines hand delivered a written letter memorializing the two (2) options Plaintiff had and left it in a flower box at Plaintiff's residence. (Exhibit 2, attached hereto). The letter signed by Mr. Stines gave Plaintiff four (4) days to pick her option.

23. At no time had Plaintiff been given the opportunity to present her side of the accusations being made against her, and at no time was she given or afforded the opportunity for a hearing to confront and cross-examine her accusers, present her own evidence and be represented by counsel.

24. The two (2) options offered by Mundorf and Stines were calculated to force Plaintiff to quit – a constructive discharge. If Plaintiff had accepted a demotion to a teaching position, her salary would have been significantly reduced, and Plaintiff's retirement pay is calculated by averaging the last three (3) years of wages. Plaintiff would go from an administrator's retirement pay, to a teacher's retirement pay – something no one in their right mind would do. Mundorf and Stines knew that.

25. Because Plaintiff was discharged, whether it be actual or constructive, BASSC violated her property interest in her employment by virtue of her written contract and in violation of the Fourteenth Amendment; violated her due process rights under the Fourteenth Amendment by failing to afford her a "name-clearing" hearing; and, violated her liberty interest under the Fourteenth Amendment by accusing her of illegal acts, incompetence, and unfitness in her profession. Further, because Plaintiff was discharged for advocating for students protected by the IDEA and ADA, BASSC has violated the anti-retaliation provisions of Title VII. And

finally, BASSC has outright breached the written contract between it and Plaintiff under Illinois law.

## COUNT I
### Violation of the Fourteenth Amendment of the United States Constitution
### (Property Interest)

26. Plaintiff hereby incorporates by reference paragraphs 1 – 25, as though fully set forth herein.

27. At the time of Plaintiff's discharge on June 30, 2015, she possessed a property interest in her continuing employment by virtue of a written contract through June 2017. The contract provided she could only be discharged "for cause".

28. Defendant BASSC violated Plaintiff's Fourteenth Amendment property interest by constructively discharging her on June 30, 2015.

29. As a direct and proximate result of Defendant BASSC's violation, Plaintiff has been damaged in the loss of wages and benefits of employment exceeding $173,000.00. Plaintiff is further entitled to the recovery of compensatory damages suffered for permanent damage to her personal and professional reputation, emotional distress, humiliation, outrage, and embarrassment from Defendant's actions.

30. As a direct and proximate result of Defendant BASSC's conduct, Plaintiff has incurred the costs of this action.

31. Plaintiff is entitled to recover reasonable attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

WHEREFORE, Plaintiff respectfully requests this Court to enter Judgment against Defendant BASSC for economic damages exceeding $173,000.00, prejudgment interest,

compensatory damages, costs of this action, attorney's fees, and for such other and further relief as this Court deems just and proper in the premises.

## COUNT II
## Violation of the Fourteenth Amendment of the United States Constitution
## (Due Process)

32. Plaintiff hereby incorporates by reference paragraphs 1 – 25, as though fully set forth herein.

33. At the time of Plaintiff's discharge on June 30, 2015, she possessed a property interest in her continuing employment by virtue of a written contract through June 2017. The contract provided she could only be discharged "for cause". Both the contract and the due process clause of the Fourteenth Amendment required Defendant to provide Plaintiff the opportunities of a notice of charges, a hearing to confront and cross-examine adverse witnesses, to present witnesses on her behalf, and to be represented by counsel.

34. Defendant BASSC violated Plaintiff's Fourteenth Amendment due process rights by denying Plaintiff her entitlement to a pre-discharge, "name-clearing" hearing.

35. As a direct and proximate result of Defendant BASSC's violation, Plaintiff has been damaged in the loss of wages and benefits of employment exceeding $173,000.00. Plaintiff is further entitled to the recovery of compensatory damages suffered for permanent damage to her personal and professional reputation, emotional distress, humiliation, outrage, and embarrassment from Defendant's actions.

36. As a direct and proximate result of Defendant BASSC's conduct, Plaintiff has incurred the costs of this action.

37. Plaintiff is entitled to recover reasonable attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

WHEREFORE, Plaintiff respectfully requests this Court to enter Judgment against Defendant BASSC for economic damages exceeding $173,000.00, prejudgment interest, compensatory damages, costs of this action, attorney's fees, and for such other and further relief as this Court deems just and proper in the premises.

## COUNT III
### Violation of the Fourteenth Amendment of the United States Constitution
### (Liberty Interest)

38. Plaintiff hereby incorporates by reference paragraphs 1 – 25, as though fully set forth herein.

39. At the time of Plaintiff's discharge on June 30, 2015, she possessed a liberty interest in her personal and professional reputation to be free of unwarranted, vicious, cruel, and slanderous accusations.

40. Defendant BASSC violated Plaintiff's Fourteenth Amendment liberty interests by making such accusations and refusing Plaintiff the opportunity to confront her accusers.

41. As a direct and proximate result of Defendant BASSC's violation, Plaintiff has suffered permanent damage to her personal and professional reputation, thereby affecting her future ability to obtain employment. Plaintiff is therefore entitled to the recovery of compensatory damages suffered due to emotional distress, humiliation, outrage, embarrassment and damage to reputation from Defendant's actions.

42. As a direct and proximate result of Defendant BASSC's conduct, Plaintiff has incurred the costs of this action.

43. Plaintiff is entitled to recover reasonable attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

WHEREFORE, Plaintiff respectfully requests this Court to enter Judgment against Defendant BASSC for economic damages exceeding $173,000.00, prejudgment interest, compensatory damages, costs of this action, attorney's fees, and for such other and further relief as this Court deems just and proper in the premises.

## COUNT IV
### Violation of Title VII, 42 U.S.C. § 2000(e) et seq.
### (Retaliation)

44. Plaintiff hereby incorporates by reference paragraphs 1 – 25, as though fully set forth herein.

45. In March 2015, Plaintiff was constructively discharged from her employment because she had created and enforced policies which advocated for students with disabilities under the IDEA and ADA. She had enforced regulations and rules prohibiting the use of arrests, isolation, seclusion and restraint, which violated the rights of students with disabilities under those statutes. Specifically, Plaintiff was constructively discharged in March 2015, because Plaintiff's advocacy for those students, and the policies she created, was, in the words of Matt Stines and Barney Mundorf, the "most serious" of her offenses.

46. Plaintiff's advocacy for those students was a motivating factor in her discharge.

47. As a direct and proximate result of Defendant BASSC's conduct, Plaintiff has suffered lost wages and benefits of employment exceeding $173,000.00. Plaintiff is further entitled to the recovery of compensatory damages suffered for permanent damage to her personal and professional reputation, emotional distress, humiliation, outrage, and embarrassment from Defendant's actions.

48. As a direct and proximate result of Defendant BASSC's conduct, Plaintiff has incurred the costs of this action.

11

49. Plaintiff is entitled to recover reasonable attorney's fees pursuant to 42 U.S.C. § 2000(e) et seq.

## Exhaustion of Administrative Prerequisites

50. On October 23, 2015, Plaintiff filed a Charge of Discrimination against Defendant BASSC with the Equal Employment Opportunity Commission ("EEOC"), specifically alleging retaliation in violation of Title VII for her advocacy of students with disabilities. (Exhibit 3, attached hereto).

51. On April 15, 2016, the EEOC and the U.S. Department of Justice, Civil Rights Division issued its Notice of Right to Sue to Plaintiff. (Exhibit 4, attached hereto). Plaintiff has instituted this action within ninety (90) days of her receipt of her Right to Sue.

WHEREFORE, Plaintiff respectfully requests this Court to enter Judgment against Defendant BASSC for economic damages exceeding $173,000.00, prejudgment interest, compensatory damages, costs of this action, attorney's fees, and for such other and further relief as this Court deems just and proper in the premises.

## COUNT V
## Breach of Written Contract

52. Plaintiff hereby incorporates by reference paragraphs 1 – 25, as though fully set forth herein.

53. On October 16, 2013, Plaintiff and Defendant entered into a written contract of employment through June 2017.

54. On June 30, 2015, Plaintiff was constructively discharged from her employment in violation of that contract.

55. As a direct and proximate result of Defendant BASSC's conduct, Plaintiff has suffered lost wages and benefits of employment exceeding $173,000.00.

56. As a direct and proximate result of Defendant BASSC's conduct, Plaintiff has incurred the costs of this action.

WHEREFORE, Plaintiff respectfully requests this Court to enter Judgment against Defendant BASSC for economic damages exceeding $173,000.00, prejudgment interest, costs of this action, and for such other and further relief as this Court deems just and proper in the premises.

Respectfully submitted,

THE BAGSBY LAW FIRM

/s/ Larry A. Bagsby
Larry A. Bagsby, #6200222
125 North Main Street, Suite 204
St. Charles, MO 63301
(636) 244-5595 telephone
(636) 244-5596 facsimile
larrybagsby@aol.com
*Counsel for Plaintiff*