## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

RUTH HAMERSKI

       Plaintiff,

vs.

BELLEVILLE AREA SPECIAL          Case No. 16-cv-796-DRH-DGW
SERVICES COOPERATIVE,

       Defendant.

### MEMORANDUM and ORDER

**HERNDON, District Judge:**

### I.   Introduction

Now before the Court is defendant, Belleville Area Special Services Cooperative's (hereinafter "BASSC"), motion for summary judgment pursuant to FEDERAL RULE OF CIVIL PROCEDURE 56 (Doc. 34). Plaintiff Ruth Hamerski (hereinafter "Hamerski"), opposes the motion (Docs. 36). For the reasons explained below, the Court grants in part and denies in part BASSC's motion for summary judgment (Doc. 34).

### II.   Background

Plaintiff Hamerski began her employment with BASSC on July 1, 2007, as an administrator for instructional programs (Doc. 37-1). At that time, she had twenty-six years of experience as a teacher and special education department chair at Mt. Vernon High School. (Doc. 35-4, pg. 15-17). BASSC is a federally

funded special educational cooperative that implements and enforces the Individuals with Disabilities Education Act (hereinafter "IDEA"). (Doc. 15, ¶ 4). It provides special education services to children between elementary and high school levels that have qualified disabilities under the Americans with Disabilities Act (hereinafter "ADA"), and whom are entitled to special education under the IDEA. (*Id* at ¶ 6). BASSC runs Pathways school, a K-12 school for emotional behavioral students (Doc. 35-3).

In 2008, Hamerski was assigned to be the interim principal of Pathways school following the resignation of the former principal in February of that year. (Doc. 15, ¶ 7). During her time as interim principal, she oversaw all BASSC instructional programs and implemented policies and procedures to ensure compliance with state and federal law (Doc. 35-4, pg. 27). Also, Hamerski alleges that she was forced to suspend a Pathways paraprofessional, Melissa Stines following a confrontation between them (*Id*. at 186). Ms. Stines was, and continues to be, married to Matt Stines, who at the time was allegedly "being groomed to become a superintendent at Grant Illini" school. (Doc. 15, ¶ 9). Hamerski states that these events were the basis of the 2015 investigation of her (*Id*. at 189).

In support of summary judgment, defendants offer the deposition testimony of Hamerski, Teresa Castello, Jeff Daugherty, Matthew Stines, Diane Warfield, Brent Whipple, Brian Arterberry, and Stephanie Cox (See Docs. 35-1 through 35-9).

In 2013, Hamerski announced that she intended to retire in 2017 or 2018. (Doc. 15, ¶ 10). Thereafter, on October 16, 2013, Hamerski and BASSC entered into a four year written contract that stated she could only be discharged "for just cause." (Doc. 15, ¶ 11). If dismissal were to occur, Hamerski would be entitled to written notice of the charges, notice of hearing, a full hearing to confront and cross-examine witnesses and evidence, and representation by legal counsel. (*Id.*).

Between 2007 and January 2015, Hamerski received "'excellent' in virtually every category" of her annual performance appraisals conducted by executive director Daugherty. (Doc. 15, ¶ 12). In 2015, however, Hamerski alleges that she would have "latent, unresolved issues in the mind of Matt Stines, and his wife, Melissa Stines." (Doc. 15, ¶ 13). The law firm Guin Mundorf, LLC was then hired to investigate Hamerski. (Doc. 15, ¶ 14). Hamerski was subsequently informed on March 13, 2015, by executive director Daugherty that she was to appear at the law office of Barney Mundorf on Monday, March 16, 2015, regarding the aforementioned investigation. (Doc. 15, ¶ 16).

At said meeting, Mr. Mundorf accused Hamerski of the following violations: (1) "being negligent in her duties regarding training of teachers"; (2) "lying about eight (8) claimed work days in July, 2014"; (3) "her IDEA instructions on restraint and arrest of children from calendar year 2008 at Pathways"; and, (4) "whether she told a subordinate administrator to keep illegal, confiscated drugs in his desk." (Doc. 15, ¶ 17).

On March 18, 2015, Jeff Daugherty and Hamerski were then summoned to a full executive board meeting. (Doc. 15, ¶ 19). At that meeting, the findings of the investigation were presented, and the full board went into a closed session, but took no action regarding Mr. Daugherty or Hamerski's employment. (Doc. 15, ¶ 19). Following the meeting, Mr. Stines and Mr. Mundorf took Mr. Daugherty and Hamerski into a conference room. (Doc. 35-3, pg. 65-66). Hamerski alleges that Mr. Stines indicated that the most serious act of misconduct alleged against her was regarding student arrest (Doc. 35-4, pgs. 119;121). During the conversation Hamerski alleges that she was told that she had two options moving forward: (1) retire or (2) "be demoted with a substantial decrease in pay, and we may look at further action being dismissal". (Doc. 35-4, pg. 119). The following day, March 19, 2015, Hamerski received a written letter signed by Mr. Stines memorializing the two options and giving her four days to make a decision. (Doc. 15, ¶ 22).

Despite her stated intention to retire in 2017 or 2018, on March 19, 2015, Hamerski submitted a signed letter of resignation to the Executive Board and Governing Board members, with the intent to retire as of June 30, 2015 (Doc. 35-8). BASSC accepted her resignation (Doc. 35-9). Thereafter, on October 23, 2015, Hamerski filed a Charge of Discrimination against BASSC with the EEOC, specifically alleging retaliation in violation of Title VII (Doc. 15-3). On April 15, 2016, the EEOC issued a right to sue letter to Hamerski (Doc. 15-4). Subsequently, Hamerski filed the underlying lawsuit on July 14, 2016 (Doc. 1)

### III.    Motion for Summary Judgment

Summary judgment is proper when the pleadings, discovery, and disclosures establish that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Winsley v. Cook Cnty.*, 563 F.3d 598, 602–03 (7th Cir. 2009); Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Indiana*, 259 F.3d 619, 625 (7th Cir. 2001); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor, as well as resolve all factual disputes in favor of the non-moving party. *Scott v. Harris*, 550 U.S. 372 (2007); *Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008).

The party seeking summary judgment bears the initial burden of establishing the absence of factual issues and entitlement to judgment as a matter of law. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex*, 477 U.S. at 323). In response, the non-moving party may not rest on bare pleadings alone, but instead must highlight specific material facts to show the existence of a genuine issue to be resolved at trial. *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). The Court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *McGrath v. Gillis,* 44 F.3d 567, 569 (7th Cir. 1995).

# IV. Analysis

Hamerski's five count first amended complaint alleges as follows: (1) a violation of plaintiff's property interest in employment by virtue of her written contract under the Fourteenth Amendment of the United States Constitution; (2) a violation of plaintiff's due process rights under the Fourteenth Amendment of the United States Constitution for not affording a "name-clearing" hearing; (3) a violation of plaintiff's liberty interest under the Fourteenth Amendment of the United States Constitution for accusing her of "illegal acts, incompetence, and unfitness in her profession"; (4) a violation of Titles I and II of the ADA for retaliating against plaintiff after she advocated for the students protected under that statute and the IDEA; and, (5) a breach of plaintiff's employment contract. (Doc. 15, ¶ 25). In BASSC's motion for summary judgment, BASSC seeks judgment as a matter of law on all five counts (Doc. 35). Each count shall be analyzed in turn.

## a. Count I: Violation of Fourteenth Amendment Property Rights

Hamerski alleges that she possessed a property interest in her continuing employment with BASSC by virtue of a written contract extending through June 2017, and containing a "for cause" provision relevant to dismissal (Doc. 15, ¶ 26). Hamerski argues that BASSC violated her property interest when she was constructively discharged without due process, in violation of the Fourteenth Amendment.

The Fourteenth Amendment procedural protection of property is a "safeguard of the security of interests that a person has already acquired in specific benefits. These interests… may take many forms." *Board of Regents v. Roth*, 408 U.S. 564, 576 (1972). The Supreme Court has held that dismissals during the term of a contract create interests in continued employment that are safeguarded by due process. *Id.* at 576-77 (citing *Slochower v. Board of Education*, 350 U.S. 551, 559 (1956); *Wieman v. Updegraff*, 344 U.S. 183 (1952)). Individuals claiming these interests must have "a legitimate claim of entitlement to it," rather than an "abstract need or desire for it… [or] a unilateral expectation of it." *Id.*; *See* also *Cole v. Milwaukee Area Technical College Dist.*, 634 F.3d 901, 904 (7th Cir. 2011).

Whether or not a plaintiff has a property interest in continued employment is a question of state law. *Redd v. Nolan*, 663 F.3d 287, 296 (7th Cir. 2011) (citing *Id.*); *See* also *Cole*, 634 F.3d at 904. It must be shown that "a state law, an ordinance, a contract, or some other understanding" limited the employer's ability to discharge the plaintiff. *Id.* (citing *Krecek v. Board of Police Comm'rs of La Grange Park*, 646 N.E.2d 1314, 1318-19 (Ill. App. Ct. 1995); *See* also *Palka v. Shelton*, 623 F.3d 447, 452 (7th Cir. 2010).

In this case, Hamerski alleges that her employment contract limited BASSC's ability to discharge her. In the case of a contract, a plaintiff generally must show that the terms provide for termination "only 'for cause' or otherwise evince 'mutually explicit understandings' of continued employment." *Cole*, 634

F.3d at 904 (citing *Omosegbon v. Wells* 335 F.3d 668, 674 (7th Cir. 2003) (internal citations omitted)). It is in this way that a property interest is "created and defined by the terms of [the employee's] appointment," and the "employer's discretion is clearly limited so that the employee cannot be denied employment unless specific conditions are met." *Id.* (quoting *Roth*, 408 U.S. at 578; *Colburn v. Trs. Of Ind. Univ.*, 973 F.2d 581, 589 (7th Cir. 1992)). Furthermore, an employee cannot voluntarily resign and then complain about a lack of due process. *Palka*, 623 F.3d at 453 (citing *Dusanek v. Hannon*, 677 F.2d 538, 543 (7th Cir. 1982)). However, an "involuntary" resignation, such as a constructive discharge, can sometimes form the basis for a due process claim. *Id*. A constructive discharge occurs when, from the standpoint of a reasonable employee, an employer "makes employment so unbearable that an employee resigns...." *Id*. It has been held that "[w]hen an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee resigns, the employer's conduct may amount to a constructive discharge." *E.E.O.C. v. University of Chicago Hospitals*, 276 F.3d 326, 332 (7th Cir. 2002). That is, when "'the handwriting [was] on the wall' and the axe was about to fall," employment could have been so unbearable as to make a reasonable person resign. *Id.* (quoting *Lindale v. Tokheim Corp.*, 145 F.3d 953, 956 (7th Cir. 1998)).

In its motion for summary judgment, BASSC argues in favor of summary judgment asserting that the evidence presented does not reach the legal standard

for constructive discharge. More specifically, the facts reveal that Hamerski's working conditions were not intolerable, and instead, support a finding that she voluntarily resigned from her position. Conversely, Hamerski argues that this is a case of "Cat's Paw Liability," because when faced with the choice between early retirement and an involuntary demotion to a position with substantially less pay and retirement benefits, Hamerski really had no choice. As a result of the written letter memorializing her two options, plaintiff asserts that her property interest was lost to "a predetermined outcome" (Doc. 37, pg. 10). She would have been "reclassified from an administrator's salary to a lower paying teaching position…." (Doc. 37, pg. 10), without the benefit of due process in her demotion. Plaintiff goes on to assert that "no one in their right mind would choose to retire at a teacher's salary, when they had earned an administrator's retirement salary after thirty-four (34) years." (Doc. 37, pg. 11).

Given the circumstances surrounding plaintiff's resignation, and construing the facts in plaintiff's favor, a genuine issue of material fact exists as to whether a reasonable person would have felt that his or her employment had become unbearable and, thus, compelled to resign. Plaintiff has presented evidence sufficient enough to create a reasonable inference that given her options following the May 18, 2015 meeting with Stines and Mundorf, her resignation was involuntary, thus creating a situation involving a possible constructive discharge. Therefore, the Court will deny summary judgment as to Count I.

**b. <u>Count II: Violation of Fourteenth Amendment Due Process Rights</u>**

In Count II, plaintiff contends that BASSC deprived her of her Fourteenth Amendment procedural due process rights, when she was constructively discharged without notice of the charges, a hearing to confront adverse witnesses, the opportunity to present witnesses on her behalf, and the opportunity for representation by counsel. (Doc. 15, ¶ 33). A procedural due process violation occurs when "(1) conduct by someone acting under the color of state law; (2) deprives the plaintiff of a protected property interest; (3) without due process of law." *Redd*, 663 F.3d at 296 (internal citation omitted). The Supreme Court has consistently held that "some form of hearing is required before an individual is finally deprived of a property interest." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citing *Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974) (internal citations omitted)); *See* also *Roth*, 408 U.S. at 570-71 ("When protected interests are implicated, the right to some kind of prior hearing is paramount."). This is because the "right to be heard before being condemned to suffer grievous loss of any kind… is a principle basic to our society." *Id*. (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 168 (1951) (Frankfurter, J., concurring)). Further, due process requires the opportunity to be heard "at a meaningful time and in a meaningful manner." *Id.* (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) (internal citations omitted)); *See* also *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (stating that the right to notice must also be granted at a meaningful time and in a meaningful manner).

What are necessary, therefore, are procedures "tailored, *in light of the decision to be made, to 'the capacities and circumstances of those who are to be heard…*' to insure that they are given a meaningful opportunity to present their case." *Id*. at 348-49 (quoting *Goldberg v. Kelly*, 397 U.S. 254, 268-69 (1970) (emphasis added)). Even when there has been an opportunity to be heard, though, the Supreme Court has "traditionally insisted … [the] opportunity for that hearing must be provided before the deprivation at issue takes effect." *Fuentes, 407 U.S.* at 82; *Bell v. Burson*, 402 U.S. 535, 542 (1971); *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971); *Goldberg*, 397 U.S. at 261; *Armstrong*, 380 U.S. at 551; *Mullane v. Central Hanover Tr. Co*., 339 U.S. 306, 313 (1950); *Opp Cotton Mills v. Administrator*, 312 U.S. 126, 152—53 (1941); *United States v. Illinois Central R. Co*., 291 U.S. 457, 463 (1934); *Londoner v. City & County of Denver*, 210 U.S. 373, 385—86 (1908).

BASSC argues that Hamerski fails to prove a constructive discharge because she refused to avail herself of the procedural protections developed by BASSC when she voluntarily resigned. BASSC argues that by voluntarily resigning, Hamerski chose to forgo the available due process procedures, rather than face the notice of charges giving cause for her termination. (Doc. 35, pg. 15). BASSC alleges that Hamerski made this well-informed choice not to exercise her due process rights after consulting legal counsel and her supervisor.

Hamerski, on the other hand, contends that her due process rights were violated when the letter outlining her two options failed to offer "a name-clearing

hearing, the right to contest any evidence or the right to be represented by counsel." (Doc. 37, pg. 10). She argues that even if these things were provided, the fact that the outcomes were predetermined, as evidenced by the March 19, 2015 letter, which proved that "no fair minded decision maker would be listening." (*Id.*. *See also Roth*, 408 U.S. at 569; *Goldberg*, 397 U.S. at 271; *Zenith Corp. v. Hazeltine*, 395 U.S. 100, 123 (1969).

However, the Court notes that the voluntariness of her resignation—a question of fact for the jury to decide— is critical to the determination of whether plaintiff's due process rights were violated. A public employee who voluntarily resigns cannot complain about a lack of due process, but an "involuntary" resignation may in certain circumstances form the basis of a due-process claim. *Dusanek v. Hannon*, 677 F.2d 538, 543 (7th Cir.1982). As mentioned in the analysis on Count I, given the circumstances surrounding the voluntariness of plaintiff's resignation, a genuine issue of material fact also exists as to whether plaintiff was deprived of due process prior to her resignation. Therefore, the Court denies summary judgment as to Count II.

### c. <u>Count III: Violation of Fourteenth Amendment Liberty Interests</u>

In Count III, Hamerski contends that she possessed, and was deprived of, a liberty interest in her personal and professional reputation when BASSC made allegedly slanderous accusations against her, and refused to allow her to confront her accusers (Doc. 15, ¶¶ 39-40). In its motion for summary judgment, BASSC argues that Hamerski fails to establish sufficient damages giving rise to

deprivation of a protectable liberty interest. Specifically, BASSC argues that Hamerski fails to show that BASSC distinctly altered her legal status, in addition to the alleged defamation. Viewed in a light most favorable to the non-movant plaintiff, the Court agrees with BASSC.

"Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *See Paul v.* Davis, 424 U.S. 693, 711 (1976); *Roth*, 408 U.S. at 573 (quoting *Constantineau*, 400 U.S. at 437) (internal citations omitted); *See also Palka*, 623 F.3d at 454. However, damage to reputation alone cannot form the basis of a claim. *Id.; Mann v. Vogel*, 707 F.3d 872, 878 (when state actor makes allegations that damage reputation no federally protected liberty interest is implicated). Instead, "it is only the 'alteration of legal status,' such as government deprivation of a right previously held, 'which, combined with the injury resulting from the defamation, justif[ies] the invocation of procedural safeguards.'" *Hinkle v. White*, 793 F.3d 764, 768 (2015) (quoting *Mann v. Vogel*, 707 F.3d 872, 878 (7th Cir. 2013) (internal citations omitted)). The relevant inquiry is whether there was "an injury to reputation *along* with a change in legal status…." *Id.* (quoting *Somerset House, Inc. v. Turnock*, 900 F.2d 1012, 1015 (7th Cir. 1990)).

To prevail on this liberty cause of action, a discharged state employee must show that "(1) he was stigmatized by the defendant's conduct, (2) the stigmatizing information was publicly disclosed, and (3) he suffered a tangible loss of other employment opportunities as a result of public disclosure." *Strasburger v. Bd. of*

*Educ., Hardin Cty. Cmty. Unit Sch. Dist. No. 1*, 143 F.3d 351, 356 (7th Cir. 1998), quoting *Johnson v. Martin*, 943 F.2d 15, 16 (7th Cir.1991). Although the Court finds that a genuine issue of material fact exists as to the first and second elements, Hamerski has not presented evidence indicating that a genuine issue of material fact exists as to the third element. Since the third element is dispositive in this case, the Court shall only address that element in its analysis.

Relative to Count III, BASSC argues that Hamerski fails to show that BASSC distinctly altered her legal status. In response, Hamerski contends that in conjunction with her termination, statements deprived her of a liberty interest in pursuing the occupation of her choice; she maintains that the statements both seriously damaged her good name, reputation, honor and integrity and imposed a stigma upon her that foreclosed future employment opportunities.

In order for a plaintiff to establish that she suffered a tangible loss of employment opportunities, the stigmatizing statement must "[not] merely result in reduced economic returns and diminished prestige, but [rather] permanent exclusion from or protracted interruption of employment." *Munson v. Friske*, 754 F.2d 683, 693 (7th Cir.1985) ("Liberty is not infringed by a label of incompetence or a failure to meet a specific level of management skills, which would only affect one's professional life and force one down a few notches in the professional hierarchy.") *Id*. The Seventh Circuit has stated that an employee's liberty interest is infringed only if the statement "had the effect of blacklisting the employee from

employment in comparable jobs." *Trejo v. Shoben*, 319 F.3d 878, 889 (7th Cir.2003).

Upon review of the record and applicable law, the Court finds that Hamerski fails to make a showing that prospective employment opportunities have been foreclosed to her due to Melissa Taylor and Diane Warfield's statements regarding the circumstances surrounding plaintiff's retirement. In her deposition testimony, Hamerski admits that after retiring, she sought no additional employment opportunities and, therefore, was not turned down by any potential employer as a result of Taylor or Warfield's statements.

> **Q:** Have you sought any type of employment using your certifications and endorsements?
> **Hamerski**: I have not.
> **Q:** Have you turned in any resumes other than to Ms. Wilson?
> **Hamerski**: I have not.
> **Q:** Did you turn in a resume to Ms. Wilson?
> **Hamerski**: I did not.
> **Q:** Have you made any phone calls seeking employment?
> **Hamerski**: I have not.

(Doc. 35-4, pg. 85). Although Hamerski notes that she is currently employed to clean the home of Ms. Mardel Wilson, nothing indicates that she actually sought employment at any other education facilities following her retirement. Ultimately, Hamerski cannot demonstrate that her liberty has been infringed in the manner required by the case law.

Accordingly, the Court concludes that no reasonable jury could conclude that **Hamerski** was defamed or stigmatized for purposes of the Fourteenth

Amendment by the statements of any of the defendants referenced herein, and thus she was not deprived of her liberty interest in continuing her career in public school administration. Therefore, the Court **GRANTS** summary judgment as to Count III.

### d. <u>Count IV: Violations of Titles I and II of the Americans with Disabilities Act (Retaliatory Discharge)</u>

In Count IV, Hamerski contends that she was constructively discharged because "she had created and enforced policies which advocated for students with disabilities under the IDEA and ADA." (Doc. 15, ¶ 45). She allegedly "enforced regulations and rules prohibiting the use of arrests, isolation, seclusion and restraint," which she believed violated the rights of students with disabilities under those statutes. (Doc. 15, ¶ 45). Hamerski supports her claim by pointing out that Mr. Stines and Mr. Mundorf called her advocacy of those policies and practices that she created the "most serious" of her offenses. (Docs. 35-4; 35-5; 36). Further, Hamerski exhausted her administrative prerequisites by obtaining the right to sue from the Equal Employment Opportunity Commission on April 15, 2016. (Doc. 15-4).

The ADA's retaliation provision "protects *any* individual who 'has opposed an act or practice made unlawful by [the ADA] or… has made a charge [under the ADA].'" *Silk v. City of Chicago*, 194 F.3d 788, 799 (7th Cir. 1999) (emphasis added); 42 U.S.C. § 12203(a). Further, that provision makes it unlawful to "coerce, intimidate, or interfere with *any* individual… on account of his or her having *aided or encouraged any other individual* in the exercise or enjoyment of,

any right granted or protected by [the ADA]." 42 U.S.C. § 12203(b) (emphasis added). Absent direct evidence of retaliatory animus, the plaintiff can show a prima facie case of retaliation by pointing to the following: (1) he or she engaged in statutorily protected expression; (2) he or she suffered an adverse action; and (3) there is a causal link between the protected expression and the adverse action. *Silk*, 194 F.3d at 799 (citing *Talanda v. KFC Nat'l Management Co.*, 140 F.3d 1090, 1095 (7th Cir. 1998); *See* also *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir. 1998)). As to the second prong, "adverse action" has been defined broadly, encompassing "job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Id.* at 800 (citing 42 U.S.C. § 12112(a)); *See* also *Rabinovitz v. Pena*, 89 F.3d 482, 488 (7th Cir. 1996).

BASSC argues that the Court should grant summary judgment as to Count IV because Hamerski fails to show a causal link between her alleged protected expression and the alleged constructive discharge. (Doc. 35, pg. 18)(citing *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1180 (7th Cir. 2013). Because Hamerski voluntarily chose to resign, BASSC argues that she fails to establish an adverse employment action. Furthermore, BASSC argues that Hamerski fails to provide any evidence linking her advocacy to her discharge.

Here, the Court finds that a question of fact exists surrounding not only the voluntariness of plaintiff's resignation, but also the but-for cause of the

resignation. Hamerski's alleged facts fit squarely within the ADA's protections for *any* individual who *opposed* an act or practice made unlawful by that statute, as plaintiff's policies were in response to the alleged arrests, isolation, seclusion and restraint of students. In fact Mr. Stines expressly stated in his deposition that of the four topics discussed in the conference room meeting with Hamerski prior to her resignation, "[t]he most significant issue and the one that I recall the most was the issue of her directing staff to seize drugs from a student and hang on to them. That was the most significant issue in my mind." (Doc. 35-5, pg. 91, lines 16-19). In Hamerski's deposition, she also stated that "Mundorf said, [] the most serious of the charges against you are regarding student arrest, and the fact that you were not providing appropriate -- I'm trying to remember the word he used -- guidance to the younger administrators; therefore, this is happening." (Doc. 35-4, pg. 119, lines 18-25). Further, there is a dispute of fact as to whether the student arrest policy was discussed in the meeting prior to Hamerski receiving the March 19, 2015, letter signed by Mr. Stines memorializing her two employment options. Not only does this claimed adverse action falls squarely within the employment examples cited in *Silk*, but plaintiff has presented sufficient evidence to create a reasonable inference linking her advocacy to the alleged constructive discharge.

Therefore, given the discrepancies surrounding the voluntariness of plaintiff's resignation, and construing the facts in plaintiff's favor, a genuine issue of material fact exists as to the causal connection between her advocacy opposing the use of "arrest, isolation, seclusion, and restraint," on the ADA students and

the adverse action of being retaliated against. The Court denies summary judgment as to Count IV.

### e. **Count V: Breach of Employment Contract**

In Count V, Hamerski alleges that she entered into a written contract of employment through June of 2017 with BASSC. (Doc. 15, ¶ 53). Despite the existence of said contract, she alleges a breach by way of constructive discharge. Defendant argues in favor of summary judgment because "constructive discharge" is not recognized as a stand-alone tort under Illinois law. (Doc. 35, pg.19) (citing *Dudycz v. City of Chicago,* 133, 563 N.E.2d 1122, 1126 (1990). Defendant also asserts that rather than a constructive discharge, Hamerski "voluntarily resigned on her own accord as permitted under her employment contract and BASSC accepted" the resignation. (Doc. 35, pg. 20). Hamerski, however, argues that she was not an at-will employee, but rather had a "written, fixed-term contract requiring discharge only for 'just cause,'" rather than at-will employment. (Doc. 36, ¶ 5). Rather, she cites authority for the proposition that the "at-will" doctrine does not apply when there is a written contract, and that a demotion is a breach. (Doc. 37, pg. 16) (citing *Arneson v. Board of Trustees, McKendree College*, 569 N.E. 2d 252, 256-58 (5th Dist. 1991).

Under Illinois law, "a person has a property interest in his job only where he has a legitimate expectation of continued employment based on a legitimate claim of entitlement." *Cromwell v. City of Momence*, 713 F.3d 361, 364 (7th Cir. 2013) (citing *Moss v. Martin*, 473 F.3d 694, 700 (7th Cir. 2007) (internal citations

omitted)). Because employment relationships in Illinois are presumed to be at will, an expectation of continued employment must be shown through a "substantive state-law predicate." *Id.* (quoting *Omosegbon*, 335 F.3d at 674). In other words, there must be "a specific ordinance, state law, contract or understanding limiting the ability of the state or state entity to discharge him." *Rujawitz*, 561 F.3d at 688 (quoting *Moss*, 473 at 700; *Krecek*, 646 N.E.2d at 1319). In the contracting sense, "the terms of employment must provide that termination will only be 'for cause' or 'otherwise evince mutually explicit understandings of continued employment.'" *Cromwell*, 713 F.3d at 364 (quoting *Omosegbon*, 335 F.3d at 674); *See* also *Garrido v. Cook Cnty. Sheriff's Merit Bd.*, 811 N.E.2d 312, 319 (Ill. App. Ct. 2004) (As "a public employee who could only be terminated for cause," the petitioner "enjoyed a property interest in her continued employment…").

Here, Hamerski can prove the existence of a contract that contained a "for cause" provision and certain procedural requirements that limited BASSC's to effectuate her discharge. As to the last two elements ––breach and damages–– material facts remain in dispute. As the Court notes above, the voluntariness of Hamerski's resignation is a question of fact for the jury, and that question is critical to their determination of whether Hamerski's employment contract was breached. Therefore, the Court denies summary judgment as to Count V.

## V.     <u>Conclusion</u>

Accordingly, the Court **GRANTS in part and DENIES in part** defendant BASSC's motion for summary judgment pursuant to FEDERAL RULE OF CIVIL PROCEDURE 56 (Doc. 34). The Court **GRANTS** summary judgment on Count III and **DENIES** summary judgment as to all other counts. The parties are **DIRECTED** to contact Magistrate Judge Wilkerson's chambers, if a settlement conference would be beneficial.

**IT IS SO ORDERED.**

Judge Herndon
2018.03.20
16:26:42 -05'00'

**United States District Judge**